# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ALBERT MEDINA,

    Petitioner,

vs.

BRIAN E. WILLIAMS, SR., et al.,

    Respondents.

Case No. 2:09-CV-01331-GMN-(GWF)

**ORDER**

    Before the court are the second amended petition for writ of habeas corpus (#30), respondents' answer (#43), and petitioner's reply (#48). The court finds that petitioner is not entitled to relief, and the court denies the petition.

    A grand jury indicted petitioner on five counts of sexual assault, victim 65 years of age or older, one count of battery with intent to commit a crime, victim 65 years of age or older, one count of first-degree kidnaping, victim 65 years of age or older, and one count of being a convicted sex offender and failing to change his address. Ex. 2 (#19). Petitioner filed a pre-trial habeas corpus petition in the state district court. That court granted the petition in part, dismissing the address-change count, and denied the petition on all other grounds. Ex. 8 (#19). Petitioner appealed. The Nevada Supreme Court dismissed the appeal because it had no jurisdiction to consider an appeal from the denial of a pre-trial habeas corpus petition.[1] Petitioner went to trial, the jury found him

---

[1] Petitioner has provided this court with the Nevada Supreme Court's remittitur. Ex. 9 (#19). He has not provided any other documents from that appeal, Medina v. State, No. 41999. The court has obtained this information from the on-line docket of the Nevada Supreme Court,

guilty of the remaining seven counts, and the state district court so convicted petitioner. Ex. 26 (#22). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 37 (#22). The Nevada Supreme Court then issued an amended opinion that directed the district court to correct an error in the judgment of conviction; the amended opinion contained no other changes. Ex. 40 (#22). Petitioner then filed a post-conviction habeas corpus petition in the state district court. Ex. 43 (#23). That court denied the petition. Ex. 52 (#23). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 60 (#23).

Petitioner then commenced this action. The court appointed counsel, who filed a first amended petition (#18) and a second amended petition (#30).

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state

---

http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=9850 (report generated July 26, 2012).

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.  Review under § 2254(d) is limited to the clearly established federal law that existed at the time of the state-court adjudication on the merits. Greene v. Fisher, 132 S. Ct. 38 (2011).

In ground 1, petitioner presents two claims that his rights guaranteed by the Confrontation Clause of the Sixth Amendment were violated.  The victim, Francine Ryer, died before the trial.  At trial, the prosecution presented the hearsay testimony of Dorothy Golden, a neighbor, and Marian Adams, a sexual assault nurse examiner.  The witnesses testified as to what Ryer told them that petitioner did to her.

The Sixth Amendment requires that when the state seeks to introduce testimonial statements given out of court, the declarant must be unavailable to testify and a prior opportunity for cross-examination must have existed.  Crawford v. Washington, 541 U.S. 36, 68 (2004).  States have greater flexibility in their evidentiary rules for non-testimonial hearsay.  Id.

The issue in ground 1 depends on whether Ryer's declarations were testimonial.  Having died before trial, Ryer was unavailable to testify, but there was no prior opportunity for petitioner to cross-examine the witnesses because the prosecution initiated the criminal case before the grand jury, which has no cross-examination.  Crawford left open the definition of "testimonial," but prior testimony at a preliminary hearing, prior testimony before a grand jury, and statements given to police at interrogations are testimonial.  541 U.S. at 68.  A subsequent decision clarified when a

statement to police is "testimonial." Davis v. Washington, 547 U.S. 813, 822 (2006). Davis is inapplicable for Ryer's statement to Golden because Golden was a neighbor, not a police officer.

The court will first turn to ground 1(b), Dorothy Golden's testimony. On direct appeal, the Nevada Supreme Court first held that Ryer's statement to Golden qualified as an excited utterance:

> The district court found that Ryer was still under the stress of excitement caused by the rape when she informed Golden that Medina had raped her. Ryer was a stroke victim who walked with a limp and had difficulty speaking clearly. Golden testified that when Ryer opened the door, Ryer stated, "Look at me. Look at me. I've been raped." Golden then proceeded into the apartment where Ryer told her about the rape:
>
>> And all of a sudden, [Medina] just jumped up and caught [Ryer] from behind, just caught her hair and wound her hair in his hand and drug her to the bedroom in the bed and raped her repeatedly, repeatedly.
>>
>> [Ryer] said [Medina] just did her like she was a rag doll. She said he went from her vagina to her mouth and to her rectum, and he just went backward and forth. And he choked her, and she said she was begging for him, "I can't [breathe]. I can't [breathe]."
>>
>> [Ryer] said [Medina] would give her a little bit of air, and then he would start back to choking her. And that went on and on.
>>
>> And then [Ryer] said finally [Medina] drug her to the bathroom and tried to make her take a shower, and she wouldn't. And he held her by her good hand, her left hand, and he got in the shower, and he bathed.
>
> Golden testified that Ryer "had on a bra and panties, and her panties were drenched in blood. And she had cuts on her thighs, and her hair was all over her head. And she just looked like a ghost. She just looked horrified." Golden further testified that Ryer was crying, appeared pale and shaken, and had bruises on her arms and throat. Ryer had not changed out of her blood-soaked undergarments or attempted to seek help from emergency services. Ryer was physically and mentally incapable of seeking help because she continued to suffer from the trauma of the rape after the rape occurred. However, the moment Golden arrived, Ryer immediately exclaimed to her that she had been raped and how the rape occurred. In essence, Ryer's excitement was uttered in response to the appearance of Golden, a rescuer. Thus, under the particular facts of this case, Ryer made the statement while still under the stress of excitement caused by the rape. Accordingly, the district court did not manifestly err when it admitted Golden's testimony under the excited utterance exception.

Ex. 40, at 7-8 (#22). The Nevada Supreme Court then held that the rule in Crawford was inapplicable because Ryer's declaration to Golden was not testimonial:

> Even though the United States Supreme Court has not provided a comprehensive definition of "testimonial," this court recently has. In Flores v. State, [120 P.3d 1170, 1178-79 (Nev. 2005),] we concluded that a statement is testimonial if it "'would lead an objective witness'" to reasonably believe "'that the statement would be available for use at a later trial.'"
>
> Golden's hearsay testimony that Ryer told her she had been raped did not violate the Confrontation Clause because Ryer's statement was not testimonial under Crawford or

-4-

> Flores. First, the statement was not in the form of an affidavit, was not made during a custodial examination, and was not prior testimony that Medina was unable to cross-examine Ryer on.
>
> Additionally, Ryer's statement was not one that Ryer would reasonable expect to be used prosecutorially because Ryer made the statement to a neighbor and had yet to contact the police or emergency services herself. Under these circumstances, it cannot be said that Ryer reasonably expected her statement to Golden to be used in the prosecution of Medina.

Ex. 40, at 9-10 (#22) (footnote omitted). Other than the inapplicable decision in Davis, at the time of the Nevada Supreme Court's decision the Supreme Court of the United States had left the definition of "testimonial" open, but had not expanded upon it.[2] No clearly-established federal law existed regarding statements like the one Ryer gave to Golden. Consequently, the decision of the Nevada Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Carey v. Musladin, 549 U.S. 70, 77 (2006); 28 U.S.C. § 2254(d)(1).

Without a violation of the Confrontation Clause, the controlling decision of the Supreme Court is Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) which holds that rulings on state evidentiary law are not addressable in federal habeas corpus unless they render the proceedings fundamentally unfair. The Nevada Supreme Court held that Ryer's declaration to Golden was an excited utterance and thus could be admitted into evidence. Ex. 40, at 8 (#22). In the second amended petition (#30), at 8-10, petitioner argues how the state courts violated state evidentiary law, but he does not argue that the state courts' rulings made the proceedings fundamentally unfair. In the reply (#48), at 11-13, petitioner argues that the trial was fundamentally unfair because Ryer's statement to Golden was testimonial, and thus Golden's hearsay testimony violated the Confrontation Clause. This argument fails because the Nevada Supreme Court's determination that Ryer's statement was not testimonial could not have been contrary to, or an unreasonable application of, clearly established federal law. Next, petitioner states, "Assuming arguendo, that Ms. Ryer's statements to Ms. Golden were 'non-testimonial' pursuant to Crawford, the admission of Ms. Golden's hearsay testimony as 'excited

---

[2]The initial decision of the Nevada Supreme Court, Ex. 37, pre-dated Davis. The amended decision was issued after Davis, but the only change was a direction to the district court to amend the judgment of conviction to show that petitioner was convicted after a jury trial.

1  utterances' violated Medina's Sixth Amendment right to confront witnesses and his Fourteenth
2  Amendment due process rights." Reply, at 13 (#48). As support, petitioner quotes from California
3  v. Green, 399 U.S. 149, 155-56 (1970), "[W]e have more than once found a violation of
4  confrontation values even though the statements in issue were admitted under an arguably
5  recognized hearsay exception." However, immediately following that sentence, the Court noted,
6  "The converse is equally true: [M]erely because evidence is admitted in violation of a
7  long-established hearsay rule does not lead to the automatic conclusion that confrontation rights
8  have been denied." Id. at 156.
9      Attractive quotations aside, Green does not answer the questions posed by Ryer's statement
10 to Golden. Green involved an unreliable witness, named Porter, who gave one version of events in
11 a statement to a police officer, named Wade, and in preliminary-hearing testimony, and then gave
12 another version of events at trial. He was presented with his prior inconsistent statements during his
13 trial testimony, and Wade testified as to what Porter told him. Green first held:
14     Contrary to the judgment of that court, the Confrontation Clause does not require excluding
       from evidence the prior statements of a witness who concedes making the statements, and
15     who may be asked to defend or otherwise explain the inconsistency between his prior and his
       present version of the events in question, thus opening himself to full cross-examination at
16     trial as to both stories.
17 399 U.S. at 164. In other words, the Confrontation Clause is not violated when a witness is
18 presented with prior inconsistent statements. Next, Green held that preliminary hearing testimony,
19 subject to cross-examination, would be admissible under the Confrontation Clause if the witness
20 was unavailable to testify at trial, and thus the Confrontation Clause does not bar admission of such
21 prior testimony if the witness also does testify at trial. Id. at 165-67. Neither of these holdings are
22 applicable to Ryer's statement to Golden. The holdings discuss testimony, the Nevada Supreme
23 Court held that Ryer's statement was not testimonial, and that holding of the Nevada Supreme Court
24 was not an unreasonable application of, or contrary to, clearly established federal law. Third, Green
25 noted that the admission of Porter's hearsay declaration to Wade was a question that it left to
26 another day. Id. at 169-70. This is a question that the Supreme Court answered in Davis. As noted
27 above, Davis is inapplicable to Ryer's statement to Golden because Golden was not a police officer.
28 In short, other than the attractive quotation, Green provides no guidance to this court beyond what

-6-

Crawford already provides: For testimonial statements, unavailability and an opportunity for prior cross-examination is necessary to satisfy the Confrontation Clause. For non-testimonial statements, the states have flexibility in their hearsay laws. 541 U.S. at 68.

In short, the state court ruled that Ryer's statement to Golden was admissible hearsay because it was an excited utterance. Petitioner has made no argument independent of the Confrontation Clause that the admission of the hearsay made the trial fundamentally unfair. Ground 1(b) is without merit.

Ground 1(a) concerns Ryer's declaration to Adams, the sexual assault nurse examiner. The Nevada Supreme Court held that this declaration did violate the Confrontation Clause:

> The same conclusion cannot be drawn from Adams' testimony. During trial, Adams testified as to what Ryer told her about the rape during the sexual assault examination. Adams testified that Ryer stated that "she was choked, that she was hit, that [Medina] put his penis into her mouth, into her vagina, he put his penis into her rectum. [Ryer] stated that [Medina] put his mouth on her vagina and then he put his penis into her mouth." In Flores, this court held that the witnesses' hearsay testimony violated the Confrontation Clause because the witnesses were either police operatives or were tasked with reporting instances of child abuse for the prosecution. Here, Adams was a police operative. She testified that she is a "forensics nurse" and that she gathers evidence for the prosecution for possible use in later prosecutions. As such, the circumstances under which Ryer made the statements to Adams would lead an objective witness to reasonably believe that the statements would be available for use at a later trial. Ryer was not available for trial, and Medina had no prior opportunity to cross-examine her regarding the statements to Adams. Therefore, the district court manifestly erred when it admitted the statements Ryer made to Adams during the sexual assault examination.

Ex. 40, at 10 (#22) (footnote omitted). This court agrees with that holding. The Nevada Supreme Court then held that the error was harmless beyond a reasonable doubt. Id., at 11 (#22) (citing, inter alia, Chapman v. California, 386 U.S. 18 (1967)).

In determining on federal habeas corpus whether an error is harmless, this court does not determine pursuant to 28 U.S.C. § 2254(d)(1) whether the Nevada Supreme Court applied Chapman reasonably. Instead, this court uses a more forgiving standard of harmless-error review. Fry v. Pliler, 551 U.S. 112, 119-20 (2007); Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010). In federal habeas corpus, an error is harmless unless it "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 631, 638 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to

habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637.

The court does not find that the error led to a substantial and injurious effect upon the jury's deliberations. The passages from the Nevada Supreme Court, quoted above, show that Ryer's declaration to Adams was largely the same as Ryer's declaration to Golden, and Golden's hearsay testimony did not violate the Confrontation Clause. Adams also testified about Ryer's injuries, and those injuries were consistent with Ryer's declaration to Golden. See Ex. 19, at 170-88 (#20). Testimony from other witnesses, and from petitioner himself, placed petitioner in Ryer's apartment at the time Ryer suffered her injuries.[3] Adams' inadmissible testimony did not present any facts to the jury that were not already presented through other, admissible testimony. Petitioner suffered no actual prejudice, and the error was harmless.

Reasonable jurists might debate over the court's conclusion, and the court will issue a certificate of appealability for both parts of ground 1.

Ground 2 is a claim that insufficient evidence existed to support the verdicts on the five charges of sexual assault.[4] "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. "[I]t is the exclusive province of the jury, to decide what facts are proved by competent evidence. It was also their province to judge of the credibility of the witnesses, and the

---

[3]Petitioner testified. He stated that he and Ryer had consensual sexual intercourse. Ex. 21, at 19-21, 28-29 (#21). Petitioner also presented an expert, Diana Faugno, who testified that Ryer's injuries could be consistent with consensual sexual intercourse. Ex. 20, at 97-119 (#21).

[4]Petitioner makes no claim regarding the charges of battery and kidnaping.

-8-

weight of their testimony, as tending, in a greater or less degree, to prove the facts relied on." Ewing's Lessee v. Burnet, 36 U.S. (11 Pet.) 41, 50-51 (1837).

Petitioner raised this issue on direct appeal, but the Nevada Supreme Court did not rule upon it expressly. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784.

"A person who subjects another person to sexual penetration, or who forces another person to make a sexual penetration on himself or herself or another, or on a beast, against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his or her conduct, is guilty of sexual assault." Nev. Rev. Stat. § 200.366(1). "'Sexual penetration' means cunnilingus, fellatio, or any intrusion, however slight, of any part of a person's body or any object manipulated or inserted by a person into the genital or anal openings of the body of another, including sexual intercourse in its ordinary meaning." Nev. Rev. Stat. § 200.364(4). Under Nevada law, each separate and distinct act of sexual assault may be charged as a separate count. Deeds v. State, 626 P.2d 271, 272 (Nev. 1981).

Petitioner's argument relies in large part upon the claim in ground 1 that Golden's testimony was inadmissible; the court has held otherwise. Golden's testimony, quoted above, adds up to at least four separate instances of sexual penetration. Independent of Ryer's declaration, Golden testified that Ryer was distraught, disheveled, bruised, and that her undergarments were bloody. Petitioner's testimony adds another instance of fellatio. Ex. 21, at 19 (#21). Petitioner also testified that the sex was consensual, but the jury was under no obligation to believe all of his testimony. Both Adams, the sexual assault nurse examiner, and Faugno, the defense expert, testified that Ryer's injuries could have been consistent with consensual sexual intercourse. However, the Nevada Supreme Court reasonably could have determined that the jury found that the sex was without Ryer's consent in light of Golden's testimony about what Ryer told her and Golden's own recollection of Ryer's appearance and behavior. Without consent the acts of sexual penetration

///

become sexual assault as defined by Nevada law.  See Richter, 131 S. Ct. at 786.  Ground 2 is without merit.

The court will grant a certificate of appealability for ground 2.  Reasonable jurists would not disagree with the court's ruling if those jurists accepted the court's premises, but one of those premises—the admissibility of Golden's testimony—is a matter of debate.

Ground 3 contains multiple claims of ineffective assistance of trial counsel and appellate counsel.  "[T]he right to counsel is the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970).  A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.  "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . .  Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."  Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. (citation omitted).

1    The Sixth Amendment does not guarantee effective counsel per se, but rather a fair
2 proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.
3 Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell
4 below an objective standard of reasonableness alone is insufficient to warrant a finding of
5 ineffective assistance.  The petitioner must also show that the attorney's sub-par performance
6 prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,
7 but for the attorney's challenged conduct, the result of the proceeding in question would have been
8 different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence
9 in the outcome."  Id.
10   In ground 3(a), petitioner claims that trial counsel pressured petitioner to testify, even though
11 petitioner desired to remain silent because of his prior convictions.  On this issue, the Nevada
12 Supreme Court held:

> [A]ppellant claimed that his trial counsel was ineffective for forcing him to testify at trial. Appellant claimed that evidence of his previous sexual assault convictions was heard by the jury because he was forced to testify.  Appellant failed to demonstrate that his trial counsel was deficient or that he was prejudiced.  "The accused has the ultimate authority to make certain fundamental decisions regarding the case, such as whether to plead guilty, waive a jury, testify on one's own behalf, or take an appeal." . . . Here, appellant chose to testify on his own behalf after being canvassed by the district court.  The district court explained to appellant that if he decided to testify, the jury would be allowed to hear information concerning his criminal record.  Appellant informed the district court that he understood. Further, nothing in the record indicated that appellant was forced to testify against his wishes.  Therefore, the district court did not err in denying this claim.

19 Ex. 60, at 5-6 (#23).  Petitioner supports his claim in his second amended petition (#30) with two
20 letters from him to counsel.  See Ex. 13, 17 (#19).  Petitioner did not present these letters to the state
21 courts.  This court determined that the letters did not make ground 3(a) unexhausted because they
22 did not change the nature of the claim fundamentally.  Order, at 1-2 (#42) (citing Chacon v. Wood,
23 36 F.3d 1459, 1468 (9th Cir. 1994)).  However, when a federal court reviews a claim, the merits of
24 which have been decided by a state court, the review is restricted to the record that was before the
25 state court.  Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  In other words, even though
26 Exhibits 13 and 17 did not make ground 3(a) unexhausted, the court cannot consider them in its
27 / / /
28 / / /

review of ground 3(a) because petitioner did not present the exhibits to the state courts, and the state courts ruled upon the corresponding ground on the merits.[5]

The Nevada Supreme Court's decision was reasonable in light of the record before the state courts. The trial court canvassed petitioner about his right to testify or not to testify, and about the prosecution's right to ask petitioner about prior convictions if petitioner chose to testify. Ex. 20, at 120-23 (#21). The trial court and the parties discussed at length on what convictions, and how much detail, the prosecution could inquire. Id., at 123-35, 173-85 (#21). Petitioner was present all that time. By the end of the discussion, he knew how the inquiry into his prior convictions would proceed if he decided to testify. The record does not show any pressure by counsel to testify. Under these circumstances, the Nevada Supreme Court reasonably applied Strickland. 28 U.S.C. § 2254(d)(1).

Ground 3(b) is a claim that appellate counsel failed to consult and discuss the appeal with petitioner, and thus counsel did not raise issues on direct appeal that petitioner wanted raised. Petitioner supports his claim in his second amended petition (#30) with three letters from him to counsel. See Ex. 29, 35, 36 (#22).[6] Petitioner did not present these letters to the state courts. This court determined that the letters did not make ground 3(b) unexhausted because they did not change the nature of the claim fundamentally. Order, at 1-2 (#42) (citing Chacon, 36 F.3d at 1468). However, just as with exhibits 13 and 17 in support of ground 3(a), the court cannot consider them because its review is limited to the record before the state courts in their rulings on the merits. Pinholster, 131 S. Ct. at 1398. Petitioner argues that counsel should have raised four issues on direct appeal: Waiver of his right to a preliminary hearing, double jeopardy, the denial of his pre-trial petition for a writ of habeas corpus, and the denial of his right of confrontation.

---

[5] In their briefing on their motion to dismiss (#36), respondents argued that Vasquez v. Hillery, 474 U.S. 254 (1986), upon which Chacon is based, is no longer good law because it would allow a federal court to consider facts that a state court did not consider in its adjudication upon the merits, thus violating § 2254(d)(1). Reply, at 3-4 (#41). Two and a half months later, the Supreme Court announced the same standard in Pinholster, but it did not overrule Vasquez. The court of appeals has noted that this has created a tension in the law, but it has deferred answering the question. Stokley v. Ryan, 659 F.3d 802, 808 (9th Cir. 2011).

[6] Petitioner also mentions exhibits 28 and 31 in support of this claim, but those exhibits do not mention any appellate issues.

-12-

The court can dispense with two of these issues immediately. First, petitioner could not have waived his right to a preliminary hearing because the prosecution did not charge him by a criminal complaint. Instead, the prosecution sought an indictment from the grand jury, and there is no preliminary hearing in grand-jury proceedings. Appellate counsel was not ineffective for failing to raise a claim that lacked merit on its face. Second, petitioner's claim that counsel was ineffective for failing to appeal the denial of his right to confrontation lacks merit because appellate counsel did raise the issue on direct appeal.

The Nevada Supreme Court addressed the claim about the lack of an appeal from the pre-trial petition for a writ of habeas corpus. In the state habeas corpus proceedings, petitioner raised this as a claim of ineffective assistance of trial counsel, because it would have been trial counsel who should have filed an interlocutory appeal. The Nevada Supreme Court held:

> [A]ppellant claimed that his trial counsel was ineffective for failing to file an interlocutory appeal from the denial of a pre-trial writ of habeas corpus. Appellant failed to demonstrate that his counsel's performance was deficient. The right to appeal is statutory; where no statute or rule provides for an appeal, no right to appeal exists . . . . No statute or court rule provides for an appeal from an order denying a pre-trial petition for a writ of habeas corpus. . . . Therefore, the district court did not err in denying this claim.

Ex. 60, at 2-3 (#23) (citations omitted). This was a reasonable application of <u>Strickland</u>, because counsel is not required to raise on appeal an issue plainly without merit. Additionally, as the court noted at the start of this order, counsel actually did appeal the denial of the pre-trial petition. The Nevada Supreme Court dismissed the appeal on October 27, 2003, because no statute or rule allowed for an appeal from the denial of a pre-trial habeas corpus petition.

On the issue of whether appellate counsel should have raised the issue of double jeopardy, the Nevada Supreme Court held:

> [A]ppellant claimed that his appellate counsel was ineffective for failing to argue that he received multiple convictions for the same incident in violation of double jeopardy. Appellant failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced. "The great weight of statutory authority supports the proposition that separate and distinct acts of sexual assault committed as a part of a single criminal encounter may be charged as separate counts and convictions entered thereon." . . . Appellant forcibly penetrated the victim anally and orally, repeatedly penetrated the victim vaginally, and forcibly performed oral sex upon the victim. Thus the record indicated that separate and distinct acts of sexual assault occurred, even though all acts occurred as part of a single encounter. Appellant failed to demonstrate that this issue had a reasonable probability of success on appeal. Therefore, the district court did not err in denying this claim.

Ex. 60, at 10-11 (#23) (citations omitted). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983). The Nevada Supreme Court has determined that the state legislature allowed for each separate act of sexual assault to be charged and punished in a separate count. Deeds, 626 P.2d at 272. An appeal on double-jeopardy grounds from petitioner's conviction of five counts of sexual assault would have been futile given that legislative intent. The Nevada Supreme Court's ruling that appellate counsel was not ineffective for not raising the double-jeopardy issue was a reasonable application of Strickland. 28 U.S.C. § 2254(d)(1).

Reasonable jurists would not find the court's conclusions on the effectiveness of trial and appellate counsel to be debatable, and the court will not issue a certificate of appealability for ground 3.

**IT IS THEREFORE ORDERED** that the second amended petition for writ of habeas corpus (#30) is **DENIED**. The clerk of the court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** on the following issues:

1. Whether the court was correct in its determination that the hearsay testimony of Dorothy Golden did not violate the Confrontation Clause;

2. Whether the court was correct in its determination that the hearsay testimony of Marian Adams, although it violated the Confrontation Clause, was harmless error; and

3. Whether the court was correct in its determination that sufficient evidence existed to support the verdicts for the five counts of sexual assault.

DATED this 6th day of August, 2012.

_____
Gloria M. Navarro
United States District Judge